UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS. 00-6133-CR-DIMITROULEAS
00-6227-CR-DIMITROULEAS
00-6235-CR-DIMITROULEAS
00-6236-CR-DIMITROULEAS

UNITED STATES OF AMERICA, :

    Plaintiff, :

v. :

THOMAS BARRETT STRINGER, :

    Defendant. :
_____/

## OBJECTION TO PRE-SENTENCE INVESTIGATION REPORT

Thomas Barrett Stringer ("Stringer"), by counsel, hereby files this objection to the Pre-Sentence Investigation Report (PSI) for the following reasons:

### SOPHISTICATED MEANS

Stringer is charged in four Indictments with various charges related to counterfeit securities. It is alleged that he prepared counterfeit checks and insufficient funds checks that he ultimately cashed or attempted to be cashed at financial institutions around the country. The scheme involved either withdrawing money from accounts funded from insufficient checks or, by the use of his computer, counterfeiting legitimate checks from established businesses and depositing those monies into his own accounts or accounts he set up under fictitious names.

On page 12, paragraph 30 of the PSI, Stringer receives two extra points for "sophisticated means"pursuant to § 2F1.1(b)(6)(C) of the Sentencing Guidelines. Those two points are in addition



to the two points that Stringer received for "more than minimal planning" pursuant to § 2F1.1(b)(2). Stringer objects to the two points for "sophisticated means."

Stringer is computer literate. These checks were created and printed with the aid of a computer. Because of his use of fictitious names and a computer, United States Probation Officer Fortunato, in writing the PSI, gave two extra points to Stringer for "sophisticated means."

The commentary to §2F1.1(b)(6)(C) states as follows:

> ..."sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction would ordinarily indicate sophisticated means. Conduct such as hiding assets or transactions, or both through the use of fictitious entities, corporate shells, or offshore bank accounts also ordinarily would indicate sophisticated means.

It is the position of Stringer that no "sophisticated means" were required to produce these checks. Over the counter software (Quicken, Photo Shop, and Versa Check) is available to anyone. The nature of the software is such that anyone who can turn on a computer and follow the prompts can create these checks. It requires no special education, training or license, and is readily available to the general public. The use of fictitious names and traveling to the home bank to cash either counterfeit or insufficient funds checks has been around as long as checks have existed. No "sophisticated means" were necessary to carry out this "scheme."

This is a case of first impression in the Eleventh Circuit where "more than minimal planning" and "sophisticated means" are added to the Guideline sentence of a defendant. "More than minimal planning" is inherently included within "sophisticated means." What distinguishes "sophisticated means" from "unsophisticated means" is the level of "planning." In analogous cases courts have

2

reversed for "double counting."

The Sixth Circuit has held that it is improper double counting to enhance a sentence for both more than minimal planning and leadership role, United States v. Carr, 5 F.3d 986 (6th Cir. 1993). Under the Sixth Circuit's reasoning, a defendant who receives an enhancement for leadership role necessarily engages in more than minimal planning. The Sixth Circuit has also reversed an obstruction enhancement for the defendant's failure to shave before trial where he had been sentenced for contempt for the same conduct, United States v. Perry, 30 F.3d 708 (6th Cir. 1994). The Sixth, Ninth and Eleventh Circuits have interpreted Guideline section § 2K2.4 (use of a firearm during a crime), to specifically prohibit double counting where the defendant is convicted of carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c), United States v. Vincent, 20 F.3d 229 (6th Cir. 1994); United States v. McInnes, 976 f.2d 1226 (9th Cir. 1992); United States v. Rogers, 981 F.2d 497 (11th Cir. 1993).

Thomas Barrett Stringer specifically objects to the two extra points for "sophisticated means" and requests his guideline offense level be 15, criminal history VI, for a guideline range of 41-51 months.

## CRIMINAL HISTORY

On page 29, paragraph 88 of the PSI, Stringer's criminal history points are computed at 40 points for a level of VI. Even though 40 points is high, and United States Probation Officer Fortunato suggests that Stringer's offense level should be increased, the reported criminal history points do not tell the entire story. Stringer objects to any increase.

Besides the Government's recommendation of the "low end" of the Guidelines, pursuant to the plea agreement, Stringer's criminal history category is sufficient to punish his conduct. Level

3

VI is the highest criminal history category and is reserved for the worst and most dangerous defendants. Without minimizing his prior conduct, Stringer has never committed a "violent" crime, nor has anyone ever been physically injured as a result of his actions. This court will hear from the defendant that the initial motivation for his criminal actions stem from his disadvantaged childhood and his misplaced role as provider for his family (see paragraphs 144-150 of the PSI). Obviously that is not a justification for his actions. However, Stringer's prior conduct does not warrant an upward departure.

Many of the criminal history points, though appropriately computed within the rules of the Guidelines, do not reflect his actions. On page 20, paragraph 59 of the PSI, Stringer pled guilty, received 2 years state prison, concurrent with 4 other charges (paragraphs 52, 54, 60 and 63). The total criminal history points for these 5 cases are 12. On page 22, paragraph 64 of the PSI, Stringer pled guilty, received 30 months state prison, concurrent with 4 other charges (paragraphs 65, 70, 71 and 75). The total criminal history points for these 5 cases is 12. On page 26, paragraph 78 of the PSI, Stringer pled guilty, received 51 months Orange County Jail, concurrent with 2 other charges (paragraphs 81 and 83). The total criminal history points for these 3 cases is 4. If the guidelines considered a plea and consolidated cases for sentence as one event, Stringer's criminal history points would be 18. Even though it would still be a level VI, Stringer's criminal history points would not be as severe as reported.

Thomas Barrett Stringer specifically objects to the requested enhancement of his criminal history category.

WHEREFORE, Thomas Barrett Stringer hereby requests that his guideline offense level be 15, criminal history category VI, and he be sentenced at the low end of the guideline range.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: *Samuel Smargon*

Samuel J. Smargon
Assistant Federal Public Defender
Florida Bar No. 150230
101 N.E. 3rd Avenue
Suite 202
Fort Lauderdale, Florida 33301
(954) 356-7436
(954) 356-7556 (fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed on this __12__ day of November, 2000 to Roger Powell, Esquire, United States Attorney's Office, 299 E. Broward Blvd., Fort Lauderdale, Florida 33301 and to Mayda Fortunato, United States Probation Officer, 301 NE First Ave., Room 315, Miami, Fl. 33132-2126.

*Samuel Smargon*

Samuel J. Smargon

S:\SMARGON\Stringer\Sentencing.01

5